HEARD APRIL TERM, 1875.

### CREIGHTON *vs.* CLIFFORD.

Before the adoption of the Constitution of 1868, a wife could exercise no powers over property settled to her use except those conferred upon her by the instrument creating the trust estate.

Under a marriage settlement, executed in 1838, by which property of the wife was conveyed to a trustee for the joint use of husband and wife during their joint lives, with limitations over, and with power, at the request of husband and wife, to sell, for the purpose of reinvestment to same uses, a bond and mortgage of the settled property given by the trustee, with the consent of husband and wife, to secure the payment of a debt contracted by the husband in the purchase of property for his individual benefit, is neither a valid execution of the power, nor will they be enforced as amounting to a covenant to execute the power in favor of the creditor.

The estate or interest of a husband in property settled to the joint use of himself and wife will be subjected, in equity, to the claims of his creditors, although it is objected that this will destroy the scheme of the settlement, prejudice the interests of the wife and impair her equities.

Where a trustee for the joint use of husband and wife gives a mortgage of the property held in trust under such circumstances as to create a lien thereon of the husband's interest and no more, the equities of the mortgagee and those of the wife may be adjusted in an action by the former to foreclose the mortgage by sale as if it were a mortgage of the whole property.

BEFORE GRAHAM, J., AT CHARLESTON, JUNE, 1874.

Action by Ann Creighton and others, plaintiffs, against Loftus C. Clifford and wife and others, defendants.

The case was referred to Samuel Lord, Esq., Referee, from whose report it will be fully understood. The report is as follows:

By an order of this Court, made on the 24th April, 1873, this case was referred to me to take testimony and to report upon all the issues of law and fact involved in the pleadings, with leave to report any special matter.

I respectfully report that, under this order, I have held numerous references, which have been attended by the solicitors of the parties, plaintiff and defendant, and have taken the testimony hereto annexed as a part of this report. The following facts have been established by the evidence adduced before me:

Mrs. Ann Creighton and her sister, Mrs. Susan Graves, owned each one undivided half of two plantations in Colleton District, known as Pringlefield and Newton. In January, 1829, a partition was made and one-half of Pringlefield and one-half of Newton was set apart to the trustees of Mrs. Graves and the other half of Pringlefield was set apart to Mrs. Creighton, individually, and of Newton to the trustees of Mrs. Creighton, under her marriage settlement.

Mrs. Graves died, leaving one child, Caroline, who, in April, 1838, intermarried with Loftus C. Clifford. Upon her marriage all her property, including one-half of the Pringlefield and one-half of the Newton plantations, which she had derived from her mother, was conveyed by deed of marriage settlement to James R. Pringle and Henry A. DeSaussure, as trustees. By this deed the property was limited to the joint use of the said Loftus C. Clifford and Caroline, his wife, during their joint lives, without impeachment of waste, and without being subject to the debts or engagements of the husband; and after the death of either of them, to the survivor for life, and after the death of the survivor, to the issue of Mrs. Clifford living at the time of her death. If there was no issue living at the time of her death, and Clifford survived her, the deed provided that one-half of the property should go to him in fee, and the other half to such persons as Mrs. Clifford might appoint by will; and in default of such appointment, to her next of kin on her mother's side. If there was no issue, and Mrs. Clifford survived her husband, the trusts of the deed were to terminate and the whole property was to revert to her absolutely. Clifford and wife have never had issue. The deed contained the following provision: "And it is further stipulated that in case the said Caroline M. Graves and Loftus C. Clifford shall, at any time hereafter, during their joint lives, or the survivor of them, according to the respective estates hereinbefore limited to them, shall think it beneficial to his, her or their interest to have the aforesaid real and personal estate, or any part thereof, sold, disposed of, invested or exchanged for other property, real or personal, and the sale moneys invested in other property, or placed at interest, that then the trustees, or the survivor of them, on being thereunto requested in writing by them, the said Caroline M. Graves and L. C. Clifford, jointly, or the survivor of them, shall absolutely sell, dispose, convey, invest or exchange the same or any part thereof, as the case may be, and invest the purchase money in such other property, real or personal, or vest it at interest, as may be required by the said Caroline M. Graves and Loftus C. Clifford, jointly, or the survivor of them; and such purchased, exchanged or substituted property, or invested funds, stock or choses in action, shall be held by the same trustees, their heirs, executors, administrators and assigns, subject to the same trusts, &c., as were limited and declared of and concerning the hereinbefore granted premises."

The deed also contained the power for the substitution of trustees, and provided that the substituted trustees should have all the powers given to those originally named in the deed. Under this power Amelia Clifford was, on the 6th March, 1849, appointed trustee. Mr. Pringle, one of the trustees, having died before that time, and Mr. DeSaussure, the other trustee, having, with the consent of the *cestui que trust*, resigned his trusteeship, on the 28th December, 1852, Loftus C. Clifford contracted with Mrs. Creighton to purchase the one-half of the Newton plantation, then held by James R. Pringle and George M. Coffin, as trustees under her marriage settlement, and also fifty-seven slaves belonging to the trust estate. By the terms of sale, Clifford was to pay for the land $28,025, and for the negroes $30,210. No part of the purchase money was to be paid in cash, but the purchaser was to give his bond for the entire amount, payable in four equal annual instalments, secured by a mortgage of the land and slaves. This arrangement did not meet the approval of the trustees, who were advised by several members of Mrs. Creighton's family, interested in the property, to require additional security. They accordingly refused to execute the contract of sale made with Mrs. Creighton and to convey the property to Mr. Clifford unless cash was paid or such additional security was furnished. To obviate this difficulty, Clifford proposed that Amelia Clifford, the trustee under his marriage settlement, should execute a bond of indemnity to secure the payment of the first instalment of his bonds to Coffin & Pringle, and a mortgage of the real estate held by her as trustee. This proposal having been accepted by Coffin & Pringle, they, on or about the 1st February, 1853, conveyed to Clifford one-half of the Newton plantation, and took his bond for the purchase money, to wit, $28,025, payable in four equal annual instalments, and a mortgage of the land conveyed to him. At the same time they executed to him a bill of sale of the fifty-seven slaves which also belonged to the trust estate, and took his bond for the purchase money, amounting to $30,210.

Cotemporaneously with these transactions, or nearly so, and in pursuance of the agreement made between Loftus C. Clifford and the trustees of Mrs. Creighton, Amelia Clifford executed to Coffin & Pringle a bond indemnifying them against any loss they might sustain in consequence of the failure of Clifford to pay the first instalment of the above mentioned bonds or conditioned for the payment of the same, and, with the consent of Clifford and wife, signified

by their joining in its execution, also executed a mortgage of that part of Newton and Pringlefield which stood in her name as trustee. The first instalment not having been paid when due, and the second instalment having nearly matured, the trustees notified Clifford that they would require as a condition for further indulgence additional security for this instalment also. Accordingly, about the 1st January, 1855, Amelia Clifford gave a second bond and mortgage of a similar character to the first, for an amount equal to the second instalment of the bonds held by the trustees. Large payments were subsequently made by Clifford to Coffin & Pringle, partly by money remitted to them and partly by consignments of rice made to them as his factors. In making these payments, Clifford gave no instructions as to their appropriation, and they were applied by the trustees to the payment of the $30,210 bond given for the negroes, to the payment of the interest upon the bond now sued on, up to February, 1864, and to certain other bonds given at the same time by Clifford to Mrs. Creighton, for other property purchased from her, and which bonds were held by Coffin & Pringle, as her agents. The accounts rendered to Clifford from time to time showed how the payments had been appropriated. He himself testified that he was told by Coffin that the payments had been applied to the negro bonds, because he considered the bonds secured by the real estate as the best security.

In this disposition of the funds he acquiesced at the time, and up to the commencement of this suit, and it is now too late for him to question it.

I annex hereto, as Exhibit A, an account showing the money received by Coffin & Pringle from Clifford, and the appropriation made of the same. I have computed the amount of principal and interest due on the bond for $28,025 up to the 4th February, 1874, and find that there will then be due the sum of $53,816.50. For the particulars of this computation I beg leave to refer to the statement herewith filed as Exhibit B. No defense has been attempted to the plaintiffs' suit, in so far as it seeks to foreclose the mortgage given by Clifford to the trustees of Mrs. Creighton to secure this bond. But the plaintiff claims that the half of Pringlefield and Newton belonging to the trust estate of Clifford and wife, and mortgaged by Amelia Clifford, trustee, as above recited, is also responsible for the first and second instalments of the bond and the interest due thereon. This claim is resisted by the defendants upon the

ground that the trustees had no authority to make the mortgage. It will be seen, by reference to the settlement, that it does not expressly give the trustee the power to mortgage. It is contended, however, that this power is included under the various powers specified in the deed. In the view which I have taken of the case, it is unnecessary to discuss this question, for I am of opinion that the validity of this mortgage could not be sustained even had the power to mortgage been expressly conferred on the trustee. Such a power would have authorized the trustee to mortgage the trust property for the purpose of changing the investment of the trust funds, or of securing debts contracted by the trustee in the due course of her administration. But the debt for which this mortgage was given was contracted by Clifford in the purchase of a plantation in his individual name and for his individual benefit.

The mortgage was, therefore, an attempt to pledge the trust property either to secure the private debt of Clifford or to indemnify the mortgagees against the consequences of their improvidence in selling trust property to Clifford upon insufficient security. In either respect, it was given for purposes wholly foreign to those for which the powers conferred on the trustee were created, and its execution was a clear breach of trust. Of this the mortgagees must, from the very nature of the transaction, have had full notice. They, therefore, participated in the breach of trust, and cannot avail themselves of the plea of being *bona fide* purchasers for value.

It was very earnestly urged on behalf of the plaintiffs that, even if the mortgage is not good as a mortgage, the transaction between the parties amounted to a covenant on the part of Amelia Clifford, made with the assent of Clifford and wife, to exercise any and all powers given to them by the deed, to hold Coffin & Pringle harmless from any loss they might sustain by the failure of Clifford to pay the first and second instalments of his bond; that, having the power to do so, through the agency of their unlimited authority to sell and invest as they please, they are bound in equity to execute that power for the purpose of fulfilling the obligation, in the faith of which other parties have parted with their property, and that upon their failure to do this the Court will order a specific performance of the covenant by requiring them to execute the power of sale and investment. Conceding, for the sake of argument, that Amelia Clifford, with the consent of Clifford and wife, might have bound the trust estate by an express covenant to sell the trust property and invest

the proceeds in the bond of Clifford in case of his inability to meet it at maturity, I am still of opinion that the plaintiffs are not entitled to the relief. It is a well-settled rule that a Court of equity will not decree a specific performance of a contract unless it be certain, fair and just in all its parts.

An agreement on the part of a married woman to sell property belonging to her trust estate and invest the proceeds in the bond of her husband given to a third person, in case he should be unable to pay it, would be such an improvident exercise of the power conferred on her that a Court of equity would scarcely feel itself bound to enforce it specifically.

But, apart from this, the plaintiffs have, in my judgment, wholly failed to establish the covenant on which they rely. The papers executed by Amelia Clifford and her *cestui que trust* have been lost or destroyed, and no witness has undertaken to prove their contents with anything like precision. Indeed, it is impossible not to be struck with the great variety of opinions expressed by the witnesses even as to their general character. Mr. Pringle, one of the trustees, for whose protection they were intended, only recollects that the security was a bond and mortgage, in which he thinks Mr. Clifford's trustee was concerned. Mr. DeSaussure, the attorney, in whose office the papers were drawn, is of opinion that they were intended to secure the first instalment of the negro bonds alone. Mr. Clifford and Mr. Mathewes think that the security was intended to secure the first two instalments of both the land and negro bonds. Mr. Clifford's testimony, however, is of little value, as he states that he had never read the bond.

Mr. Coffin, the deceased trustee, writing to Mrs. Creighton, in reference to the additional security, on the 10th March, 1855, speaks of an additional mortgage having been taken, but is wholly silent as to the bond of indemnity. This is all we know upon the subject. To find in this testimony proof of an agreement on the part of Amelia Clifford and her *cestui que trusts* to exercise any and all powers given to them by the deed of settlement to hold Coffin & Pringle harmless, or to sell the trust property and invest the proceeds in the bond of Clifford, requires, to say the least of it, the exercise of more than ordinary ingenuity. Certainly no Court of equity will decree the specific performance of a contract, even if unexceptionable in other respects, the terms of which are involved in so much doubt. Then it is said that Clifford and wife, having

united in the mortgage, cannot dispute its validity.　It is settled law in this State, that without the aid of a Court of equity a married woman cannot dispose of or charge her separate estate except in the execution of powers conferred by the instrument creating such estate.　In the present case, we have seen, no power is conferred on Mrs. Clifford to mortgage the trust property for her husband's private debt.　If she could not, in consequence of coverture, do so by her direct act, her act of concurrence or acquiescence cannot, in the absence of fraud, have such effect; but it is equally clear that Clifford is estopped from disputing the validity of the mortgage.　He was *sui juris*, and, having united in the act of the trustee, cannot question its propriety.　Under the marriage settlement he has a joint interest for life in the trust estate and a right to one-half of the fee of both plantations in case he survives his wife.　To the extent of this interest the mortgage is valid.

The plaintiffs and some of the defendants excepted to the report on the following grounds, viz.:

1. Because the Referee erred in holding that the giving of the bonds and mortgages by the trustee of Mrs. Clifford, with the assent and upon the requirement of her husband and herself, under the circumstances of the case and the powers of the marriage settlement deed, involved a breach of trust; and even if such was the case, he erred in holding that the mortgagees were cognizant of the breach of trust in such manner as to deprive them and their beneficiaries of the equity which belongs to *bona fide* purchasers for value.

2. Because the Referee further erred in his conclusions drawn from the evidence in the cause, that the character of the transaction was uncertain, it being manifest, as a matter of fact, that it was *in form* a covenant on the part of the trustee, Amelia Clifford, Mrs. Clifford and Mr. Clifford to pay the whole of the first and second instalments of both bonds in question, or such parts thereof as Mr. Clifford failed to pay;—*in substance and intent* a covenant to pay the trustees of Creighton the first and second instalments of the bonds, or any balance thereof, which Clifford failed to pay, by the exercise of their powers under the marriage settlement deed, the performance of said covenant being secured by a mortgage of the property covered by the power, which latter in itself was an execution of the power, as it conveyed in terms the property which was the subject of the power.

3. Because the Referee erred further in holding that such a transaction cannot be sustained in equity, the intent of the parties to execute their power being undeniable, and the covenant and mortgages being an execution of the power, and it being the duty as well as the invariable practice of Courts of equity to aid an execution of a power in accordance with the intent in all cases where the execution is unobjectionable in substance but defective in form.

The judgment of the Circuit Court is as follows:

GRAHAM, J. After hearing the report of the Referee and the exceptions thereto, and after full arguments, I am of opinion that the report is erroneous, in so far as it holds the trustee, Amelia Clifford, to have committed a breach of trust in giving the bonds and mortgages in question, and that the mortgagees were cognizant of it, whereby the transaction is invalid and incapable of being enforced in equity. I think the report also erroneous in representing the character of the transaction as uncertain, the evidence, to my mind, establishing clearly and beyond reasonable doubt the fact that it was, in substance and intent, an agreement under seal, secured by a mortgage of the trust property on the part of the trustee, Amelia Clifford, and Mr. and Mrs. Clifford, to pay the whole of the first and second instalments of Mrs. Clifford's bonds for the purchase of Mrs. Creighton's half of the tract, or so much thereof as he failed to pay, and by the exercise and through the agency of the powers contained in the marriage settlement deed of Mrs. Clifford to the trustees of Mrs. Creighton, in consideration of the purchase set forth in the report being completed. Is not such a transaction within the reach of equitable relief, when the intent is manifest, although in some respects it be objectionable in form? It is impossible to doubt, in view of the facts, that Mr. and Mrs. Clifford, upon the fullest advisement, *executed* these papers with reference to the powers of the marriage settlement deed, and *intended*, by virtue of each and all of the powers and authorities with which they were invested by that instrument, to give the trustees of Creighton a valid and satisfactory security. This conclusion is inevitable, unless Mr. and Mrs. Clifford and their trustee designed to commit a willful fraud, for the express purpose of obtaining the property which the trustees of Creighton had refused to convey excepting upon receiving additional security. There is no indication of such intent.

The only inquiry, therefore, is whether a Court of equity is not competent to enforce the manifest intent of parties acting under powers undoubtedly sufficient to enable the acts done. The powers in the deed before us are of the fullest scope—the widest comprehension. In cases where the form pursued in execution of the powers is objectionable or defective, I think Courts of equity are invested with such authority, and that it is among the most valuable of their capacities. The case in hand is one in which such authority should be exercised. If ever Mr. and Mrs. Clifford have had the possession and enjoyment of the property in question for years, they got it solely and entirely upon the faith of those bonds and mortgages; they have paid little or nothing for its enjoyment since the war. There are no infants or known remaindermen to be injured by their loss of it; no one can be hurt but themselves, and it is contrary to the justice and the principles of equity that they should obtain property and enjoy it at the expense of others for years, and then question the legality of their solemn obligations which for all that period of time had remained undisputed. It is, therefore, ordered that the report of the Referee be overruled in the foregoing particulars.

It is further ordered that the mortgage of L. C. Clifford to the trustees of Creighton, set forth in the pleadings, be foreclosed and the property sold upon the terms of one-third cash, balance in one, two and three years, the credit part to be secured by the bond of the purchaser, with legal interest and mortgage of the property sold, and the proceeds of sale applied in payment first of the interest due on his bond to the trustees of Creighton, and next on the principal thereof; and in case the proceeds of sale under said mortgage, appropriated as above mentioned, shall fail to pay the first and second instalments due on said bond in full, then it is further ordered that the mortgages of the trustee, Amelia Clifford, established in the case be foreclosed, and the property sold upon the terms of one-third cash, balance in one and two and three years, and the proceeds of sale applied to the payment of any deficiency which may remain unpaid upon the first and second instalments on the bond due by L. C. Clifford to the trustees of Creighton. Any surplus remaining after said instalments are paid in full, to be paid over to the trustee, Amelia Clifford, for the uses of the trust of the marriage settlement deed of Mr. and Mrs. Clifford. It is further ordered that the parties have leave to apply at the foot of this decree for any further order which may be deemed requisite.

The defendants, Loftus C. Clifford, Caroline Clifford and Miss Amelia Clifford, trustee, excepted to the foregoing decision, and appealed therefrom on the following grounds:

1. Because His Honor decided that the report of the Referee is erroneous, in holding that the trustee, Amelia Clifford, committed a breach of trust in giving the bonds and mortgages in question, and that the mortgagees were cognizant of it, whereby the transaction is invalid and incapable of being enforced in equity. On the contrary, these defendants submit that the report of the Referee in this respect is correct, and that the bonds and mortgages given by the trustee of L. C. Clifford and wife, under the circumstances, in the manner and form in which they were given, were executed by the said trustee in breach of her trust, to the knowledge of the mortgagees, and were and are invalid and of no effect.

2. Because His Honor decided that the report of the Referee is erroneous, in representing the character of the transaction as uncertain. These defendants submit that the report of the Referee in this regard also is correct, because, from the evidence, it is uncertain whether the bonds and mortgages given by the said trustee were intended to indemnify the trustees of the plaintiff from the consequences of their sale upon credit, or whether they were intended as collateral security for the first and second instalment of the bonds and mortgages of the defendant, L. C. Clifford, given for his purchase; and the transaction, being so uncertain, should not be enforced.

3. That if His Honor is correct in holding that the said transaction was, in substance and intent, an agreement under seal, secured by a mortgage of the trust property on the part of the trustee, Amelia Clifford, and Mr. and Mrs. Clifford, to pay the whole of the first and second instalments of Mr. Clifford's bonds, or so much as he failed to pay for the purchase of Mrs. Creighton's half of the tract, still these defendants except to his decision that the powers in the deed of marriage settlement were sufficiently large to enable the act done; and also to the decision of His Honor that a Court of equity is competent to enforce such an agreement, so executed, under such a deed as the said marriage settlement.

4. That these defendants except to the decision of His Honor that this is peculiarly a case demanding equitable interposition. They submit that the purchase of Mr. Clifford was of land and slaves;

that he has paid a much larger amount than the first and second instalments of his bonds for the land, but that said payments have been applied to his bonds for the slaves, and that it is inequitable for the surety, if the bond and mortgage by the said trustee be a collateral security for the first and second instalments, under the circumstances of this case, to be prejudiced by such appropriation.

5. For the said reasons, these defendants except to the decision of His Honor that the mortgage on the trust property be foreclosed and that the land be sold.

*Brewster, Spratt, Burke, Porter & Brawley,* for appellants.

*Rutledge & Young, Tracy, DeTreville, Gayer, Pringle,* contra.

June 4, 1875.    The opinion of the Court was delivered by

Moses, C. J.    The opinion of the Referee, as embodied in his clear and able report, so fully expresses the views and conclusions of the Court on the principal question involved in the case that it could well be adopted as its judgment without the addition of a single word.

The rule which prevailed in this State to the adoption of the Constitution of 1868, in regard to the powers of a married woman over her separate estate, has been too long recognized to admit of controversy.   If any difficulty ever attends its application, it arises from the doubtful language of the settlement, and not from any want of certainty in the principle by which it is to be regulated when its terms, by proper construction, are made clear.   While in England a *femme covert* may, as to her separate property, exercise any right of disposition except when restrained by the deed creating it, in South Carolina she is deprived of all power over it except such as she is permitted to assert by the very terms of the instrument.

What change has been effected in these particulars by the Constitution, it is not necessary now to consider.

Without an extension of the authority allowed and reserved by the deed before us to purposes not only at variance with the design, but actually destructive of the intention which the makers of it had in view, it is impossible to refer the act of Miss Clifford, the trustee, even with the consent of Clifford and his wife, to the powers expressed in the deed, or which, by the most forced con-

struction, could be implied from any of its terms. All the powers conferred were either for the preservation of the property conveyed, or its conversion into other property, subject to the same uses and limitations. The power which was exercised was to encumber and fetter it with burthens, which would, most probably, in the end entirely divest it from the trusts which were intended for its protection. The transaction itself 'discloses its own purposes. It was not to sell the estate with a view to reinvest its proceeds or exchange it for other property, to be affected by the conditions of ' the settlement, but it was to hamper it with a lien for the benefit of the husband as purchaser of real estate, of which the legal title was to vest, not in the trustee for the uses of the trust, but in him. Nor can the transaction be sustained as a covenant by Mrs. Clifford, under the powers secured to her by the settlement, to pay the first and second instalments of the said bond of her husband out of her separate estate. Her disability prevents any such liability at common law, and where, notwithstanding her coverture, she is permitted to exercise the rights and powers and to be affected by the liabilities of a *femme sole*, it must be in conformity with the right ·conferred by some. written instrument or allowed by statute. In either case, to avail, the act must be executed in strict compliance with all the requisitions as to form and manner prescribed by the authority which permits it.

The interest, however, of Clifford in the trust property conveyed by the deed must be held· liable to the payment of the bond and mortgage executed by Miss Clifford, the trustee, with his consent and that of his wife. It is no objection, as was urged by the counsel for the appellants, that this would destroy the scheme of the settlement, prejudice the interests of the wife and impair her equities. Whatever consequences follow from the enforcement of the settlement must be attributed to those who consented to be bound by it. It was in the power of Mrs. Clifford to suggest and dictate the conditions on which, after marriage, she was to hold and enjoy her own property, and she must abide by her act. The same objection was interposed in *Rivers* vs. *Thayer*, (7 Rich. Eq., 168,) but the Court said: "It must deal with such difficulties as they present themselves, and according to the means at their disposal."

While it will protect to the fullest extent all the equities of the wife, it will not debar the creditor from subjecting the interests of the husband to the payment of his debt. The case is in a forum

which can so mould its judgment that, while the wife may enjoy the full protection of her settlement, it shall not shield the interest of the husband from a liability to meet the just demands of his creditors.

It is objected, too, that the plaintiffs, in seeking relief through their complaint by a foreclosure of the mortgage, executed by the trustee, Amelia Clifford, cannot avail themselves of the lien created by it to subject the interest of the husband Clifford in the trust property to the satisfaction of the debt due by him to Mrs. Creighton; that such interest can only be reached by a creditor's bill framed with an aspect to that particular end. But the rights of the general creditors of Clifford (if any such there be) must be subordinate to the equity of Mrs. Creighton to have whatever interest Clifford, the husband, is entitled to in the property mortgaged to her at his request and for his use and benefit, separated from that of 'the wife and applied to the satisfaction and removal of the lien thus created. The relief so extended comports with the justice and equity of the transaction between the parties by requiring that whatever obligation it imposed should be met by reaching the interest of the husband, for whose benefit the mortgage debt was contracted.

This Court, however, does not feel itself competent to adjust the equity of the wife in the mortgaged premises without a better knowledge of the actual condition of the property than has been afforded. It must, therefore, seek for more light through the aid of a Referee.

It is ordered that so much of the decree of the Circuit Court as directs a foreclosure of the mortgage of the trustee, Amelia Clifford, established in the case, be reversed.

That on its appearing by the sale ordered in said decree of the property mortgaged by the said L. C. Clifford to the trustees of the said Mrs. Ann Creighton that it has not brought enough to pay in full the amount due on the first and second instalments of the bond it was given to secure, the case shall be remitted to the said Samuel Lord, Esq., the Referee. He will thereupon report a scheme or mode by which the interest of the said L. C. Clifford in the property conveyed by the said marriage settlement should be appropriated to the payment of any balance remaining due on said instalments after such sale, with the least possible prejudice to the interests of the said Mrs. Caroline M. Clifford therein.

The report of the Referee to be made to the Circuit Court, to which the case is remanded for any further orders which may be necessary to carry out the views of the Court as herein declared.

*Wright*, A. J., and *Willard*, A. J., concurred.